**IN THE COURT OF APPEALS OF IOWA**

No. 17-0281
Filed May 3, 2017

**IN THE INTEREST OF D.W. and N.W.,**
**Minor Children,**

**J.W., Father,**
    Appellant,

**S.M., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Clinton County, Phillip J. Tabor, District Associate Judge.

A father and a mother appeal separately from the order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Matthew D. Hatch of Hatch Law Firm, P.C., Bettendorf, for appellant father.

Judd J. Parker of Parker Law Office, Clinton, for appellant mother.

Thomas J. Miller, Attorney General, and Anagha Dixit and Gretchen W. Kraemer (until withdrawal), Assistant Attorneys General, for appellee State.

J.David Zimmerman, Clinton, for minor children.

Considered by Danilson, C.J., and Potterfield and Bower, JJ. Tabor, J., takes no part.

**DANILSON, Chief Judge.**

A mother and a father appeal separately from the termination of their parental rights to their two children. Both parents assert the State did not present clear and convincing evidence to support the statutory grounds for termination and termination is not in the children's best interests. Because neither parent has taken any steps to address their substance-abuse issues or to comply with the case plan requirements, we conclude grounds for termination of both parents' rights have been established and termination is in the children's best interests. We therefore affirm.

**I. Background Facts & Proceedings.**

D.W., age four, and N.W., not yet age one, are the children of the mother and the father, who are unmarried. The department of human services (DHS) became involved with the family when N.W. tested positive for THC and methamphetamine at birth. The children were removed from the parents' care on June 7, 2016. Shortly after removal, D.W. was also tested and found to be positive for methamphetamine.

The mother entered inpatient substance-abuse treatment in July 2016, but was unsuccessfully discharged in October 2016 after relapsing and using methamphetamine. The mother regularly participated in visitation with the children while in treatment. However, after being unsuccessfully discharged, the mother attended only two visits with the children, the last being November 14, 2016. The mother failed to seek additional substance-abuse treatment, attend parenting meetings, maintain communication with the DHS case manager,

address her mental-health issues, appear for requested drug testing, or obtain a residence or employment.

The father participated in more visits with the children than the mother, but his participation was sporadic. The father missed six visits in October, nine in November, four in December, and eleven in January, for a total of thirty missed visits in the four months before the termination hearing. The father missed some visits after previously confirming that he would attend, which had a detrimental effect on D.W. The father did not attend parenting meetings, obtain a psychological evaluation or mental health therapy, or report for drug testing. The father was incarcerated on a number of occasions throughout the pendency of the case—including at the time of the termination hearing—and had pending criminal charges. The father did not maintain steady employment or a stable residence throughout DHS involvement and did not have a residence at the time of the termination hearing.

The termination hearing was held February 2, 2017. In a February 6 order, the district court terminated the mother's parental rights to D.W. pursuant to Iowa Code section 232.116(1)(b), (d), (e), (f), and (*l*) (2017). It terminated the mother's parental rights to N.W. pursuant to section 232.116(1)(b), (d), (e), (h), and (*l*). The father's parental rights as to D.W. were terminated under section 232.116(1)(d), (e), (f), and (*l*); and as to N.W. were terminated under section 232.116(1)(d), (e), (h), and (*l*). The mother and father both appeal.

**II. Standard of Review.**

We review termination proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). "We are not bound by the juvenile court's findings of fact, but

we do give them weight, especially in assessing the credibility of witnesses." *Id.* (citation omitted). Our primary consideration is the best interests of the children. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

**III. Analysis.**

*A. Grounds for Termination.* The parents both assert the statutory grounds for termination were not established by clear and convincing evidence. Both parents' rights were terminated pursuant to a number of section 232.116(1) grounds, but "[o]n appeal, we may affirm the . . . termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We find the evidence supports grounds for termination under section 232.116(1)(e) as to both children, and under section 232.116(1)(h) as to N.W.

Section 232.116(1)(e) provides the court may order termination where the court finds (1) the child has been adjudicated a child in need of assistance (CINA), (2) the child has been out of the parents' custody for at least six consecutive months, and (3) "[t]here is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so." The section further elaborates:

> For the purposes of this subparagraph, "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and

requires that the parents establish and maintain a place of importance in the child's life.

*Id.* § 232.116(1)(e). There is no dispute that the children have been adjudicated CINA and have been out of the parents' custody for at least six consecutive months. The parents assert there is not clear and convincing evidence supporting section 232.116(1)(e)(3).

Section 232.116(1)(e)(3) requires a showing of two elements: (1) failure to maintain significant and meaningful contact, and (2) that no reasonable efforts have been made to resume care of the children. *See In re T.S.*, 868 N.W.2d 425, 437 (Iowa Ct. App. 2015). While each element "is separately required, . . . they are considered closely interconnected." *Id.* In considering the existence of each element, we are to consider the parents' efforts to participate in services and comply with the case plan.

As to the parents' reasonable efforts, the district court found:

The parents have not participated in the case plan. . . . The mother failed her inpatient treatment, and since being discharged unsuccessfully . . . , she has quit visitation and has had nothing to do with the case plan. The father to date has not completed anything with regard to the case plan and continues to make excuses for all of his shortcomings.

We agree that neither parent has made the necessary efforts to maintain significant and meaningful contact with the children or to resume custody.

*1. Mother—D.W.* Aside from two visits with the children in November, the mother completely abandoned participation in services after her unsuccessful discharge from inpatient treatment. The mother exhibited no interest in seeing her children or in meeting any of her responsibilities under the DHS case plan. The mother did not seek further substance-abuse treatment, did

not comply with requests for drug testing, did not address her mental-health issues, did not obtain a stable residence or employment, and did not maintain communication with the DHS case manager. The mother's reason for discontinuing visitation—that D.W.'s questions as to why she was no longer in inpatient treatment made her feel guilty—completely disregarded the effect her failure to attend visitation would have on the children. At the time of the termination hearing, the DHS case manager and service provider testified the mother's bond with the children was, at best, weak. Thus, we find the mother failed to maintain significant and meaningful contact with the children. We also find no conduct of the mother constituted reasonable efforts to resume care of the children. Therefore, as to the mother, we conclude grounds for termination are established under section 232.116(1)(e).

*2. Father—D.W.* While we acknowledge the father participated in more visitation than the mother, his irregular visits did not maintain the requisite significant and meaningful contact with the children. The father missed many opportunities for visits with the children. The father also did not attend parenting meetings as required by the case plan. The father testified it was difficult for him to attend visitation and parenting meetings due to his employment and the "barriers" that were put in place by DHS. However, the father did not testify he was always employed during the times that would conflict with visitation or parenting meetings. Also, the "barriers"—requiring the father to confirm visitation ahead of time and to be present at the service provider's office before the provider left to pick up the children—were put in place to assure the father's

attendance at visitation after he was not reliable in his attendance, causing significant disappointment to D.W.

In the last two months before his incarceration, the father attended seven of twenty-four visits. Other than sporadic attendance at visitation, the father did not comply with any of the case plan requirements. "Significant and meaningful contact" is defined as more than just visitation, it requires "a genuine effort to complete the responsibilities" set forth in the case permanency plan, to communicate with the child, and to "establish and maintain a place of importance in the child's life." Iowa Code § 232.116(1)(e)(3). Here the father did not seek substance-abuse treatment or report for drug testing, did not address his mental-health issues, did not maintain steady employment or a fixed residence, and did not attend parenting meetings. Thus, because the father did not make a genuine effort to complete the case plan responsibilities, we find he did not maintain significant and meaningful contact with the children.

We also find the father's conduct did not rise to the level of reasonable efforts to resume care of the children. Although the father did attend some visitation, "any single act which might constitute a reasonable effort" does not necessarily avoid termination. *T.S.*, 868 N.W.2d at 437. We must "look at the substance of [the father's] conduct, not just the form." *Id.* at 438. The father's unreliable attendance at visitation in and of itself had a negative effect on D.W. D.W. exhibited negative behaviors after the father failed to attend visits. Additionally, the father took no steps to remedy the reasons for the children's removal. The juvenile court reached the same conclusion stating, "The father to date has not completed anything with regard to the case plan and continues to

make excuses for all of his shortcomings." Because the father did not meet his responsibilities under the case plan, we conclude he did not make reasonable efforts to resume care of the children. Therefore, we also find grounds for termination of the father's parental rights under section 232.116(1)(e).

        *3. Mother and Father—N.W.* As to N.W., we also conclude grounds for termination of both parents' rights are established under section 232.116(1)(h)—permitting termination where the child is three years of age or younger, has been adjudicated a CINA, has been out of the parents' care for the last six consecutive months, and cannot be returned to the parents' custody at present. N.W. was under the age of one at the time of the termination hearing, was adjudicated a CINA, had been out of the parents' care for nearly eight months, and could not be returned to either parent's care. As already noted, at the time of the termination hearing neither parent had taken any steps to address their substance-abuse issues or to comply with the case plan requirements. The father was incarcerated at the time of the hearing, and the mother did not have a residence. Clearly, N.W. could not be safely returned to either parent's care at that time. Thus, grounds for termination of both parents' rights as to N.W. are established under section 232.116(1)(h).

        *B. Best Interests.* The parents also contend termination is not in the children's best interests. Iowa Code section 232.116(2) provides:

> In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren].

At the time of the termination hearing, the children did not have a strong bond with the mother due to her failure to maintain contact with the children. Although the evidence reflects there was a bond with the father, he had not made any efforts to ensure he could safely resume care of the children. Both parents failed to address their substance-abuse issues or to obtain a safe and stable home. Both parents testified they would begin to seek substance-abuse treatment if given additional time to seek reunification with the children, but had not done so during the pendency of the matter.

Determining the best interests of the children "requires considering what the future holds for the child[ren] if returned to the parents." *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). "When making this decision, we look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future." *Id.* Based on the parents' past actions, they could not be expected to safely parent the children in the future. The children are placed in a foster-to-adopt home. The children deserve permanency in a safe and stable environment. Therefore, we find termination of the parents' rights is in the children's best interests.

**IV. Conclusion.**

We conclude there are grounds for termination of the parents' rights to both children and termination is in the children's best interests. We therefore affirm termination.

**AFFIRMED ON BOTH APPEALS.**